# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| IN RE: ) | | |
| GS CONSULTING, INC., ) | | |
| ) | | |
| Debtor, ) | | |
| _____ ) | | |
| ) | | |
| 1st SOURCE BANK, Appellant / ) | | |
| Defendant / Cross-Defendant, ) | | |
| ) | | |
| v. ) | CAUSE NO.: 3:07-CV-544-TS | |
| ) | | |
| JOSEPH D. BRADLEY, TRUSTEE, ) | BANKRUPTCY CASE NO. | |
| Appellee / Plaintiff / Counter-Defendant ) | 05-33646 CHAPTER 7 | |
| ) | ADV. PROC. NO. 05-03069 | |
| CANTEEN SERVICE COMPANY OF ) | | |
| OWENSBORO, INC., Appellee / ) | | |
| Defendant / Counter-Claimant / ) | | |
| Cross-Claimaint, and ) | | |
| ) | | |
| UNITED STATES DEPARTMENT OF ) | | |
| LABOR, Appellee / Defendant. ) | | |

## OPINION and ORDER

This an appeal of a Memorandum of Decision and a Judgment of the United States Bankruptcy Court for the Northern District of Indiana. Appellant 1st Source Bank (1st Source) asks this Court to reverse the Bankruptcy Court's rulings granting Appellee Trustee's Motion for Summary Judgment; denying 1st Source's Motion for Summary Judgment; and denying 1st Source's Motions to Strike two Affidavits.

The three Appellees—Joseph D. Bradley, the Trustee (the Trustee); the United States Department of Labor (DOL); and Canteen Service Company of Owensboro, Inc., (Canteen)—each filed Briefs opposing 1st Source's arguments. 1st Source also filed a Reply Brief. The Court held a hearing for oral argument on December 11, 2008.

**BACKGROUND**

The decision of the Bankruptcy Court contains a detailed factual background of this case. The following brief recounting of uncontested facts is taken from the Stipulation of Facts [DE 2-23 to DE 2-32] and the decision of the Bankruptcy Court [DE 2-55]. Additional facts will be incorporated into the analysis section as relevant.

Debtor GS Consulting Service, Inc., (GS Consulting) in 2004 purchased through an asset purchase agreement the assets of Healthcare Resources Group (HRG), which had been performing services as a third-party administrator of healthcare claims for health insurance plans of various companies, including 1st Source and Canteen. GS Consulting accordingly took over this work as the third-party administrator. Some of the funds it collected, held, and paid were part of health insurance programs governed by the Employee Insurance Retirement Income Security Act of 1972 (ERISA). GS Consulting also kept various accounts at 1st Source. How the funds in those accounts are characterized, and whose claims on those funds are superior, are the issues for this Court to determine in this appeal.

In 2005, GS Consulting became short of funds to pay claims and filed a Chapter 7 voluntary bankruptcy petition. Two accounts that GS Consulting maintained with 1st Source are at issue here: the medical claims account, with approximately $179,302, and the operating account, with approximately $66,179. 1st Source believes that GS Consulting owes it $131,070, and the bank has made a claim for that money against the two accounts. All of the Appellees oppose that claim and argue that 1st Source must wait for the Trustee to pay ERISA beneficiaries and creditors. However, at the hearing, all of the Appellees stated that they did not contest that approximately $8,859.88 in the operating account is not ERISA money, based on the

2

determination by Frederick Slamin. (Slamin Aff. 3, DE 2-33.) The Bankruptcy Court ruled that all of the money in the two accounts is ERISA or trust money and, therefore, that 1st Source is not entitled to a setoff of GS Consulting's funds.

Canteen is involved in this appeal because it has a claim of approximately $112,412 for funds it mistakenly sent to GS Consulting. During the proceeding below, Canteen asked for a ruling that it was entitled to repayment of that money, but it eventually agreed with the Trustee's position and filed a statement asking that it be considered an ERISA plan creditor and be entitled to recovery on the same basis as the other ERISA plan creditors. The DOL has intervened because "[t]his case raises two important issues regarding the interpretation of" ERISA, (DOL Brief 7, DE 13), and because the ruling in this case "could impact future litigation the DOL might take against individuals related to GS Consulting." (*Id.* at 9.)

## ANALYSIS

This Court has subject-matter jurisdiction over this appeal of a final judgment of the Bankruptcy Court. 28 U.S.C. §§ 158(a)(1), 1334. This Court reviews conclusions of law *de novo* and findings of fact under the clear error standard. *In re Smith*, 286 F.3d 461, 464–65 (7th Cir. 2002).

The Appellant and all of the Appellees agree that this case revolves around whether the money held in GS Consulting's accounts at 1st Source is covered or protected by ERISA (or whether the money should be considered to be held in trust). At the hearing, the parties agreed that if it is covered by ERISA or held in trust, then the Appellees win, and the Bankruptcy Court's decision is correct; and that if it is not, 1st Source wins and it will be able to exercise its

contractual and/or set-off rights against the accounts to obtain its claim. 1st Source makes a series of arguments claiming that the money is not covered by ERISA and that GS Consulting was not a fiduciary: the money was never covered by ERISA, and GS Consulting was never a fiduciary, in the first place; if they were, they ceased to be after Canteen erroneously sent money to GS Consulting after it had terminated GS Consulting; Canteen's money in the 1st Source accounts lost its ERISA protection or trust status because Canteen paid its health care claimants out of its own pocket; and the Bankruptcy Court should not have used two affidavits as a basis of its decision that the money is covered by ERISA. Because the affidavits were one basis for the Bankruptcy Court's decision, this Court will review that issue first.

### A. The Admission and Use of the Evans and Slamin Affidavits

1st Source argues that the Bankruptcy Court erred by relying on inadmissible portions of the affidavits of Queenie Evans and Frederick Slamin. Canteen and the Trustee argue that the affidavits were admissible, and Canteen adds that, at worse, use of the affidavits was harmless error because so much other evidence supports the Bankruptcy Court's decision.

#### (1) *The Evans Affidavit*

Queenie Evans, who was a claims manager with HRG, provided information in a sworn affidavit [DE 2-39] relating to how HRG handled claims filed by individuals covered by the healthcare plans of HRG's clients. Specifically, the affidavit in paragraphs five through thirteen discusses HRG's discretion and authority in handling, deciding on, and paying the claims and other tasks. 1st Source argues that these statements are expressions of legal opinions and hence

4

inadmissible.

The basis of Evans' knowledge was spelled out in the affidavit: she had firsthand knowledge of the stated facts and she worked at HRG as the claims manager during the relevant period of time. It was not clearly erroneous, in fact it was correct, for the Bankruptcy Court to conclude that the substantive information in the affidavit is factual information about the type of action HRG took with medical claims and payments. Merely because these factual statements also have a legal meaning does not transform them into legal opinions.

**(2)** *The Slamin Affidavit*

Frederick Slamin, a certified public accountant who reviewed financial information as a forensic accountant for the Trustee, stated in his affidavit that "[t]he balance [is] all ERISA funds" in the two accounts except for $8,859.88 in the operating account. (Slamin Aff. 3, DE 2-33.) The basis of this was his review of GS Consulting's "books and records regarding the debtor's accounts at 1st Source Bank. These records included bank statements, cancelled checks, and other standard account records." (*Id.* at 2.) 1st Source argues that classifying money as ERISA funds is an expression of legal opinion requiring legal training.

The factual basis of Slamin's analysis is apparent in the affidavit and demonstrates that Slamin had first-hand, personal knowledge and, more importantly, that he was stating facts, not legal conclusions. Like the Evans affidavit, merely because some of Slamin's phrases ("these funds . . . all are EISA funds") can have a legal meaning does not mean they are expressions of legal opinions. This Court is satisfied that the Bankruptcy Court did not read them as such, but rather read them for what they are: factual statements. There was no error.

Therefore, the Bankruptcy Court's decision denying 1st Source's motions to strike these affidavits will be affirmed.

**B.      Whether GS Consulting Was an ERISA Fiduciary with Respect to the Funds in the Two Accounts**

A person (including an entity, such as a corporation) is a fiduciary under ERISA if, "with respect to a plan":

> (i) he exercises *any* discretionary authority or discretionary control respecting management of such plan or exercises *any* authority or control respecting management or disposition of its assets,
> . . . . or
> (iii) he has *any* discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105 (c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A) (emphases added). As the Appellees point, courts have broadly construed the term "fiduciary." The Seventh Circuit has used a "consistently broad reading of that definition." *Mut. Life Ins. Co. of N.Y. v. Yampol*, 840 F.2d 421, 425 (7th Cir. 1988). That decision cited with approval cases where a fiduciary was under "tight supervision and control" by trustees, *id.* (citing *Eaton v. D'Amato*, 581 F.Supp. 743, 745-46 (D.D.C.1980)), and where a fiduciary's work required trustee approval but the fiduciary "performed a significant portion of the work and the trustees relied heavily on his judgment," *id.* (citing *Brink v. DaLesio,* 496 F.Supp. 1350, 1374 (D. Md.1980)).

The Bankruptcy Court relied on Supreme Court decisions for the same principle. (Bankr. Ct. Mem. Decision 10–11, DE 2-55) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,113 (1989) (stating that "one is a fiduciary to the extent he exercises *any* discretionary authority control), and *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)). Evans's factual

6

description of the tasks HRG (and later GS Consulting) carried out with discretion and authority and the terms of the contract (DE 2-28, 2-29) between 1st Source and HRG fit the legal definition of an ERISA fiduciary.

1st Source argues that GS Consulting was merely "a claims processing agent with purely ministerial responsibilities." (1st Source Brief 20.) In support, 1st Source cites *Crocco v. Zerox Corp.*, 956 F. Supp. 129 (D. Conn. 1997) and the DOL's regulations concerning ERISA.

That case is not a basis to overrule the Bankruptcy Court's decision. First, GS Consulting's status or title as a claims administrator is not dispositive. "The measure of whether a person is a fiduciary is not whether that person is formally designated as such. Instead, a fiduciary should be viewed 'in functional terms of control and authority over the plan." *Ruiz v. Continental Cas. Co.*, 400 F.3d 986, 990 (7th Cir. 2005) (quoting *Mertens*, 508 U.S. at 262).

Second, *Crocco* is distinguishable from this case and does not compel a finding that GS Consulting was not an ERISA fiduciary for money belonging to Canteen or 1st Source. *Crocco's* ruling that American Psychmanagement (APM) was not a proper ERISA defendant turned on the fact that APM, on behalf of Zerox Corp., performed ministerial functions, as defined by DOL, within the context of the overall plan, guidelines and procedures, and it did not have the final say on whether to pay claims. 956 F. Supp. at 136–37. In this case, it is undisputed that GS Consulting exercised a great deal of discretion in evaluating healthcare claims and deciding whether to pay them. The record indicates that, unlike Xerox Corp. in *Crocco*, Canteen and 1st Source did not have or exercise final authority.

1st Source also argues that because some of GS Consulting's actions can be described as "ministerial" by DOL regulations, 29 C.F.R. § 2509.75-8, then GS Consulting was not acting as

7

a fiduciary. It may be true, as even Canteen concedes, (Canteen Brief 13–15), that some of GS Consulting's actions can be classified as "ministerial." But the broad definition of fiduciary in the statute—a fiduciary is one who "exercises any discretionary authority" over a plan, or "any authority" regarding assets, 29 U.S.C. § 1002(21)(A)—and in Supreme Court decisions, such as *Bruch* and *Mertens*, means that GS Consulting was indeed a fiduciary even if some of its actions, if viewed individually, might seem to be ministerial.

GS Consulting's status as a fiduciary is even more evident in light of the fact that GS Consulting apparently exercised unauthorized control over the assets. This constitutes exercising "*any* authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(iii) (emphasis added). *See Briscoe v. Fine*, 444 F.3d 478, 491–93 (6th Cir. 2006) (noting that an entity was a fiduciary because it "still controlled plan assets after the formal conclusion of its relationship with the Company and the plan participants" and because it acted unilaterally, noting the absence of the word "discretionary" in § 1002(21)(A)(iii), and collecting cases with the same approach from several other circuits); *Chao v. Day*, 436 F.3d 234, 236 (D.C. Cir. 2006) (ruling that an insurance agent charged with fraud was an ERISA fiduciary because he exercised (unauthorized) control over plan assets, and also noting the absence of the word "discretionary" in § 1002(21)(A)(iii)) (cited in *Briscoe*, 444 F.3d at 491).

In conclusion, the Court finds that GS Consulting acted as an ERISA fiduciary over the 1st Source and Canteen assets it controlled in the form of funds in the two accounts at 1st Source.

C.  **Whether GS Consulting Continued to Be a Fiduciary After Canteen Terminated Its Relationshipwith GS Consulting**

Canteen terminated GS Consulting as its third-party administrator on or about March 29, 2005. However, after that, Canteen "inadvertently deposited funds that were intended to be directed to Canteen's new Third Party Administrator in satisfaction of Canteen's ERISA obligations, in [GS Consulting's] account located at [1st Source]." (Stip. of Facts ¶ 21, DE 2-23 at 4.) 1st Source argues that even if GS Consulting was an ERISA fiduciary over money it received from Canteen and 1st Source at one time, the money Canteen sent to GS Consulting after Canteen fired GS Consulting lost its status as trust money or ERISA money. The Appellees all argue that those funds remain in trust and that 1st Source has no right to them. The Bankruptcy Court sided with the Appellees' position.

1st Source cites the following legal authority for this argument: "*See, e.g., Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 589 n.3 (1993) (noting that 'funds are "no longer" held in trust if they are misappropriated')." (1st Source Brief 26.) However, the surrounding text in the footnote of the Supreme Court decision casts doubt on 1st Source's argument:

> It is true that funds are "no longer" held in trust if they are misappropriated (just as it is true that funds are "no longer" held in trust when they are paid out in the form of pensions), but it is also irrelevant. If the payments, when received by the relevant employee representative, "are held in trust" and that trust satisfies the other requirements of § 302(c)(5) (including that it have been "established" for the proper purposes), the exception in § 302(c)(5) applies and the payments do not violate § 302. This was our precise holding in *Arroyo v. United States*, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959). The union official in that case, immediately upon receiving the employer's contributions to the trust fund, had begun diverting the funds to improper purposes. See *id.*, at 422, 79 S.Ct. at 866. Indeed, "the evidence could properly support an inference that the [union official's] purpose *from the outset* was to appropriate the [contributions to the fund] for his own use." *Id.*, at 423, 79 S.Ct. at 867 (emphasis added).

9

> Nevertheless, we held that the employer's payments were "within the precise language of § 302(c)." *Ibid.* We deemed the payments to have been "held in trust for the purpose" of benefiting employees since they were made to a trust fund established for that purpose. See *id.*, at 421, 423, 79 S.Ct. at 866, 867. Justice STEVENS criticizes us for relying on this "half" of *Arroyo* while disregarding the other "half," see, *post*, at 2261, n. 1, but the "half" to which we adhere is holding, and the "half" we disregard, dictum.

*Demisay*, 508 U.S. at 589 n.3. The rest of the footnote supports the view that the Canteen funds should be considered trust funds because, when they were received by GS Consulting, the account they were sent to had been established for purposes of an ERISA trust. Similar to (but not exactly like) the corrupt union official in *Arroyo*, GS Consulting apparently misappropriated or at least mismanaged or inappropriately commingled ERISA and trust funds it received. Nevertheless, Canteen's payments were for ERISA and trust purposes, to benefit employees and pay their healthcare claims. As a result, those funds should still be considered to be held in trust or have ERISA status, thus walling them off from 1st Source.

This ruling is supported by other ERISA caselaw that holds that the termination of a relationship does not end an entity's status as an ERISA fiduciary or transform trust or ERISA money into normal funds. *See Briscoe*, 444 F.3d at 492–95 (stating that third-party administrator, which "still controlled plan assets after the formal conclusion of its relationship with the Company and with the plan participants," was a fiduciary); *In re Contractor Technology, Ltd.*, 345 B.R. 800, 806 (Bankr. S.D. Tex. 2006) ("General principles of trust law dictate that trust assets remain in trust, regardless of how the asset is distributed.").

Therefore, the money Canteen sent to GS Consulting after Canteen fired GS Consulting remains in trust or covered by ERISA.

### D. Whether Canteen's Funds Remained ERISA Plan Assets After Canteen Paid Its Claimants

Next, 1st Source argues that the mistakenly sent funds at 1st Source lost their trust status because Canteen tried to fix its mistake by sending funds to the current third-party claims administrator. (*See* Stip. of Facts ¶¶ 25–25).

> At the time of payment [to the correct third-party administrator], Canteen effectively supplanted the funds it had sent to [GS Consulting] with the funds it used to pay the plan participants' claims. [GS Consulting] became indebted to Canteen for this amount, and Canteen became nothing more than [GS Consulting's] unsecured creditor.

(1st Source Brief 26.) 1st Source does not cite to any legal authority in support of this argument in its Brief and Reply Brief. The Trustee and Canteen disagree, and they also do not cite any legal authority. (The DOL did not address this issue in its Brief.)

Consideration of ERISA and its purposes suggests that the inadvertently sent Canteen funds should continue to be considered trust funds. This resolution is consistent with the statute's statement of findings and policy, including the policy "to increase the likelihood that participants and beneficiaries under single-employer defined benefit pension plans will receive their full benefits." 29 U.S.C. § 1001b(c)(3). This is also in accord with the approach in *Demisay*, *Arroyo*, *Briscoe*, and *In re Contractor Technology*.

In terms of public policy, Canteen should be commended, not penalized, for fixing its mistake by sending money to the new third-party administrator so its employees' health care claims are paid. To rule for 1st Source on this issue would send a message to Canteen that its effort to ensure that its employees' ERISA health care claims would be paid (and to comply with ERISA) is rewarded by another creditor getting to the front of the line to retrieve money from the debtor, GS Consulting. Thus, 1st Source's approach would discourage companies from fixing

ERISA funding mistakes as Canteen did.

E.     The Approximately $8800 "Non-ERISA" Funds in the Operating Account

The last issue is how to treat approximately $8800 in the operating account. Slamin in his affidavit stated: "I conclude that $8,859.88 of the balance of funds in this account are non-ERISA funds." (Slamin Aff. 3, DE 2-33.). He was referring to the operating account. (*Id.* at 2.) 1st Source argues that it should be able to exercise a right of setoff against these non-ERISA funds in this account. The Bankruptcy Court's ruling did not distinguish between this amount and the rest of the money in the operating account; it ruled that 1st Source cannot exercise a right of setoff against any funds in GS Consulting accounts. For this reason, 1st Source asks for a remand of the case so an exact determination of the precise amount of non-ERISA funds can be made. 1st Source suggests that there may be more non-ERISA funds in that account or even that "*all* funds in the Operating Account are not ERISA funds." (1st Source Brief 30.) The Appellees did not address this issue in their Briefs.

At the hearing, counsel for the Appellees stated that they agreed with Slamin's factual determination in his affidavit that approximately $8800 in the operating account is not ERISA money, and thus that 1st Source would be entitled to exercise a setoff and/or its contractual rights against that amount.

Because there is a factual basis (Slamin's affidavit) that approximately $8800 in the operating account is non-ERISA money, a remand to the Bankruptcy Court on this particular issue is appropriate to determine the exact amount of non-ERISA money in that account and to determine the disposition of that non-ERISA money in light of 1st Source's setoff claim.

However, the Court's ruling on this narrow issue should not be construed as an award of the approximately $8800 to 1st Source; that is a matter for the Bankruptcy Court to determine based on arguments presented below about 1st Source's setoff claims. The Court's ruling also does not seek to fix the final amount of the non-ERISA money. Slamin's affidavit is the factual basis for a remand on this issue, but the Bankruptcy Court is in the best position to determine what other evidence, if any, should be considered in order to calculate and make a legal conclusion about the exact amount of non-ERISA money.

Otherwise, the Bankruptcy Court's well-reasoned decision is affirmed in all respects.

## CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for a determination of the narrow issue of the non-ERISA money in the operating account.

So ORDERED on February 5, 2009.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION